Bret A. Stone  SBN 190161  BStone@PaladinLaw.com
Kirk M. Tracy  SBN 288508  KTracy@PaladinLaw.com
PALADIN LAW GROUP® LLP
3 W. Carrillo Street, Suite 212
Santa Barbara, CA  93101
Telephone:  (805) 898-9700
Facsimile:   (805) 852-2495

Counsel for George Torres and Roberta Torres

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE TORRES, an individual; and ROBERTA TORRES, an individual, | Case No. 2:17-cv-4059 |
| | COMPLAINT FOR: |
| *Plaintiffs*, | 1.  Cost Recovery under CERCLA § 107(a) |
| *v.* | 2.  Abatement of a Public Nuisance |
| HAROLD IGDALOFF, an individual; ESTATE OF EVELYN IGDALOFF, DECEASED, an individual; IGDALOFF 1993 FAMILY TRUST, by and through its trustee, Harold Igdaloff; UNION PACIFIC RAILROAD COMPANY, a Delaware corporation; HERMAN ROSEN, an individual; CAROLE ROSEN, an individual; SPECIALTY CARBURETOR CORPORATION, a suspended corporation; PRODUCTION CLUTCH EXCHANGE, a corporation of unknown status; EFI GLOBAL, INCORPORATED, a Delaware corporation; and DOES 1 through 10, inclusive, | 3.  Abatement of a Private Nuisance |
| | 4.  Negligence |
| | 5.  Continuing Trespass |
| | 6.  Equitable Indemnity |
| | 7.  Contribution |
| | 8.  Ultrahazardous Activity |
| | 9.  Cost Recovery under Hazardous Substances Account Act |
| | 10. Declaratory Relief |
| | 11. Professional Negligence |
| *Defendants*. | |



Plaintiffs George Torres and Roberta Torres (collectively, "Plaintiffs" or "Torres") bring this action against Defendants Harold Igdaloff; Estate of Evelyn Igdaloff, Deceased; the Igdaloff 1993 Family Trust, by and through its trustee, Harold Igdaloff; Union Pacific Railroad Company; Herman Rosen; Carole Rosen; Specialty Carburetor Corporation; Production Clutch Exchange; EFI Global, Inc.; and DOES 1 through 10, inclusive (collectively, "Defendants") and allege upon knowledge as to their own acts, and upon information and belief as to the acts of all others, as follows:

**NATURE OF THE ACTION**

1. The area of contamination for which Torres seeks relief includes three adjacent and contiguous parcels of property, comprising two addresses at 410 East 32nd Street and 317 East 33rd Street, Los Angeles, California and areas to which the contamination has migrated outside their boundaries (the "Site").

2. The 410 East 32nd Street property is comprised of APN 5120-017-901 ("Parcel A") and APN 5120-017-002 ("Parcel B"). Parcel A is a triangular section of property located on the northwest corner of that lot. Parcel B is located on the remaining portion of the lot. The 317 East 33rd Street property is comprised of APN 5120-017-030 ("Parcel C") (collectively, Parcels A, B and C are referred to herein as the "Property").

**PARTIES**

*Plaintiffs*

3. George Torres is a current owner of Parcels B and C.

4. Roberta Torres is a current owner of Parcels B and C.

*Defendants*

5. Harold Igdaloff is an individual who leased Parcel A from Union Pacific Railroad Company, f/k/a Southern Pacific Transportation Company ("Union Pacific") from 1980 until approximately 1991. Harold Igdaloff and his wife, Evelyn Igdaloff (collectively, the "Igdaloffs") purchased Parcels B and C from



Herman Rosen and his wife, Carole Rosen (collectively, the "Rosens"), in 1980. The Igdaloffs owned Parcels B and C from approximately 1980 to 2006, when the Igdaloffs sold Parcels B and C to Torres.

6.     The Estate of Evelyn Igdaloff, Deceased, is named as a defendant herein to the extent of her estate's assets, whether distributed or undistributed, and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected by liability insurance policies.  From 1980 until approximately 1991, the Igdaloffs leased Parcel A from Union Pacific.  The Igdaloffs owned Parcels B and C from approximately 1980 to 2006, when the Igdaloffs sold Parcels B and C to Torres.

7.     The Igdaloff 1993 Family Trust ("Igdaloff Trust") succeeded in the Igdaloffs' interest in the Property, both as owner of Parcels B and C and lessee of Parcel A.

8.     Union Pacific is a former owner of Parcel A.  On information and belief, Union Pacific leased Parcel A to the Rosens from approximately 1973 to 1980 and to the Igdaloffs from approximately 1980 until 1991.

9.     Herman Rosen is an individual who purchased Parcels B and C in 1973.  On information and belief, Herman Rosen leased Parcel A from Union Pacific.  Herman Rosen also was an owner and operator of Specialty Carburetor.

10.     Carole Rosen is an individual who purchased Parcels B and C in 1973.  On information and belief, Carole Rosen leased Parcel A from Union Pacific.  Carole Rosen also was an owner and operator of Specialty Carburetor.

11.     Specialty Carburetor operated a metal treating business that cleaned automotive carburetor parts at the Property from approximately 1973 to 1980.

12.     Production Clutch Exchange operated a business that involved cooling vapor degreasers at the Property from approximately 1981 to 1984.

13.     EFI Global, Inc. is the successor in interest to AE, Inc. (formerly Andersen Environmental), which conducted Phase I environmental site assessments

of the Property in 2006 and 2014.

14.    Defendants Doe 1 through 10, inclusive, respectively, are persons, partnerships, corporations, or entities who are, or were, responsible for, or in some way contributed to, contamination found at the Property that is the subject of this complaint, or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of the Defendants' facilities or operations on the Property as identified herein, or in some other manner are responsible for the occurrences herein alleged and proximately caused damages to Plaintiffs.

## JURISDICTION, VENUE, AND NOTICE

15.    This Court has jurisdiction over the subject matter of Plaintiffs' First Cause of Action pursuant to section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607.

16.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the subject matter of Plaintiffs' other causes of action because those claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the U.S. Constitution.

17.    Venue is proper in this Court pursuant to Section CERCLA § 113(b) because the release and damage occurred in this district.  42 U.S.C. § 9613(b).

18.    Plaintiffs have satisfied all jurisdictional prerequisites prior to filing this Complaint.

## GENERAL ALLEGATIONS

19.    The Site has been impacted by the presence of tetrachloroethylene ("PCE") and other solid and hazardous wastes.

20.    PCE is an industrial solvent that has been used in significant quantities in the industrial and commercial industry since the 1940s.

21.    PCE and its breakdown products are manmade chemicals and are not naturally occurring.



22.    Common synonyms for PCE include perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, petrochlorothylene, perclene, perk, perchloroethene, 1,1,2,2-tetrachloroethylene, and tetrachloroethene.

23.    PCE degrades to trichloroethylene ("TCE"), which in turn degrades to dichloroethylene ("DCE"), which in turn degrades to vinyl chloride, which in turn degrades to ethene, and finally to carbon dioxide, water, and free chlorine.

24.    As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE and many of its degradation products are closely regulated by the state of California and the federal government.  PCE, TCE, DCE, and vinyl chloride are each a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Cal. Health & Safety Code § 25281(g), and are each a hazardous waste and solid waste as those terms are defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

25.    All groundwater within the state of California, including the groundwater in, at, and around the Site and all groundwater that has allegedly been adversely impacted by contamination at and emanating from the Site is "water of the state" pursuant to California Water Code § 13050.

26.    Each Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of hazardous substances, hazardous waste, and/or solid waste in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Defendant released or otherwise discarded hazardous substances, hazardous waste, and/or solid waste, or controlled and/or operated the Site and business from which hazardous substances, hazardous waste, and/or solid waste were released or otherwise discarded, and failed to prevent or abate the hazardous substances, hazardous waste, and/or solid waste  contamination.

27.    At various times from the 1970s to the present, Defendants

intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of hazardous substances, hazardous waste, and/or solid waste in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site.

28. Once the various sudden and accidental discharges, and other discharges, including intentional discharges, were released into the environment, these hazardous substances, hazardous waste, and/or solid wastes continued to spread and migrate within the environment at the Site.

29. Defendants operated industrial and commercial businesses at the time PCE was spilled at the Property as a result of equipment malfunctions.

30. Defendants operated industrial and commercial businesses at the time PCE was spilled at the Property during the delivery of PCE.

31. Defendants operated industrial and commercial businesses at the time PCE and other potentially hazardous substances were spilled at the Property when water contaminated with PCE was emptied into an on-site wastewater clarifier.

32. Defendants operated industrial and commercial businesses at the time PCE was spilled at the Property when equipment was dismantled and removed from the Property.

33. Defendants operated industrial and commercial businesses at the Property without a hazardous materials storage or generator permit, as required by applicable federal, state, or local laws.

34. Defendants operated industrial and commercial businesses at the Property without manifesting and tracking solid and hazardous wastes, as required by applicable federal, state, or local laws.

35. Defendants operated industrial and commercial businesses at the Property without a hazardous materials business plan or proper hazardous materials training, as required by applicable federal, state, or local laws.

36. The Rosens, the Igdaloffs, and Union Pacific owned their respective

1  parcels at the time PCE was used at the Property.

2      37.   The Rosens, the Igdaloffs, and Union Pacific owned their respective

3  parcels at the time PCE was spilled, released, or disposed of at the Property.

4      38.   As a result of and in response to Defendants' releases of hazardous

5  substances, hazardous waste, and/or solid waste at the Site, Torres has incurred and

6  will continue to incur initial monitoring and investigation costs in determining the

7  scope of the contamination.

8      39.   Torres was first made aware of evidence of releases of hazardous

9  substances, hazardous waste, and/or solid waste at the Property when, after reading

10 a Phase I Environmental Site Assessment Report dated June 2, 2014, Torres was

11 advised to investigate soil vapor.   Torres followed that advice and discovered

12 elevated concentrations of PCE in soil vapor.

13     40.   Prior to the June 2, 2014 report, it was recommended that no further

14 investigation was necessary for the Site.

15     41.   Torres never operated any industrial or commercial business at the

16 Property.

17     42.   Defendants never reported to Torres any release of hazardous

18 substances, hazardous waste, and/or solid waste at or from the Property.   Therefore,

19 prior to reading the June 2, 2014 Phase I Environmental Site Assessment Report,

20 and performing the recommended soil vapor testing, Torres did not know, nor did

21 they have reason to know, of the existence of hazardous substances, hazardous

22 waste, and/or solid waste at the Property.

23                        **FIRST CAUSE OF ACTION**
                  **(Cost Recovery – CERCLA § 107(a))**
24                     **(Against All Defendants)**

25     43.   Torres realleges and incorporates by reference the allegations set forth

26 above in paragraphs 1 through 42, inclusive, as though set forth in full herein.

27     44.   Defendants used, processed, produced, stored, treated, and/or

28 generated hazardous substances in the course of their industrial and commercial

operations at the Property.

45.   Defendants caused or contributed to the spilling, leaking, disposal, and release of hazardous substances in the course of their industrial and commercial operations at the Property, thereby creating a condition of hazardous substance contamination at the Site.

46.   As a result of and in response to Defendants' release of hazardous substances, Torres undertook various monitoring and investigation activities and incurred costs in connection with initial monitoring and investigation of the hazardous substances at the Site.

47.   Defendants transported or arranged for transport of hazardous substances which they owned or possessed to the Property, and stored, treated, handled, and disposed of hazardous substances at the Property, and otherwise owned or operated the Property during the time that hazardous substances were disposed of at the Site.  Defendants are thereby jointly and severally liable under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

48.   The Site is a "facility," as defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

49.   A "release" or threatened release of PCE and other "hazardous substances," as defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), occurred at the Site.

50.   Torres did not cause or contribute to, and denies liability for costs incurred as the result of, the alleged release or threatened release of hazardous substances at the Site.  However, in the interest of an expeditious cleanup and acting in good faith, Torres has incurred and continues to incur monitoring and investigation costs to investigate, remove, and remediate the environmental contamination at the Site consistent with the National Contingency Plan.

51.   Defendants are strictly liable to Torres for the costs referred to above and for interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).



**SECOND CAUSE OF ACTION**
**(Abatement of a Public Nuisance)**
**(Against All Defendants)**

52.     Torres realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 51, inclusive, as though set forth in full herein.

53.     Civil Code § 3479 defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

54.     Civil Code § 3480 defines a "public nuisance" as "[o]ne which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

55.     Defendants caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of solid wastes, hazardous wastes, and hazardous substances in the environment in, at, and around Site, including the waters of the State of California, because each Defendant released or otherwise discarded those contaminants during their industrial and commercial operations or controlled the property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

56.     Defendants' acts and omissions in causing and contributing to releases of solid wastes, hazardous wastes, and hazardous substances in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

57.     The public nuisance condition and related endangerments to health and the environment arising from released hazardous substances in, at, and around the Site affects the entire surrounding community because it interferes with the free use



and enjoyment of publicly-owned property and natural resources, including surface water and groundwater, creating a public health risk from the vapors intruding peoples' homes and places of work.

58.    Defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in Civil Code §§ 3479 and 3480, namely the actual and potential endangerments to health and the environment created by the alleged solid waste, hazardous waste, or hazardous substance contamination.

59.    The release or disposal of PCE, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, Civil Code sections 3479-3480, California Code of Civil Procedure section 731, California Penal Code sections 372 and 374.8, Los Angeles County Municipal Code, including Chapters 11.02.300, 11.70, 12.52, 12.60, 12.64, 13.90.050 and 22.60.350, and City of Los Angeles Municipal Code, including Sections 31, 54.02–54.04, 58.02 64 and 190, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants.  Therefore, such improper activities and violations constitute a nuisance *per se*.

60.    Defendants have failed to comply with federal, state, local, and common law.

61.    Torres has suffered special injury and damages as a direct and proximate result of the contamination at, under, and around the Property because Torres has been required to investigate the soil, soil vapor, groundwater, and indoor air.

62.    The continuing nuisance complained of is abatable and Torres has demanded that Defendants abate the continuing nuisance complained of, and hereby



-10-

1    reiterates that demand.

2        63.    Torres did not consent to Defendants' conduct in causing and

3    contributing to the public nuisance.

4        64.    Defendants are strictly and jointly and severally liable for abatement of

5    the public nuisance.

6        65.    Torres is entitled to relief restraining Defendants and requiring each of

7    them, jointly and severally, promptly and competently to take such action as may be

8    necessary to abate the public nuisance and for reimbursing Torres for all monitoring

9    and investigation costs incurred and to be incurred at the Site.

10                          **THIRD CAUSE OF ACTION**
                          **(Abatement of a Private Nuisance)**
11                             **(Against All Defendants)**

12       66.    Torres realleges and incorporates by reference the allegations set forth

13   above in paragraphs 1 through 65, inclusive, as though set forth in full herein.

14       67.    The release or disposal of PCE, as alleged herein, constitutes a

15   nuisance as the release or disposal is a violation of California Water Code sections

16   13050(m), 13350, and 13387, California Health and Safety Code sections 5411,

17   5411.5, and 117555, California Fish and Game Code section 5650, Civil Code

18   sections 3479-3480, California Code of Civil Procedure section 731, California

19   Penal Code sections 372 and 374.8, Los Angeles County Municipal Code,

20   including Chapters 11.02.300, 11.70, 12.52, 12.60, 12.64, 13.90.050 and 22.60.350,

21   and City of Los Angeles Municipal Code, including Sections 31, 54.02–54.04,

22   58.02 64 and 190, the purpose of which are to set a standard of care or conduct to

23   protect the public and the environment from the type of improper activities engaged

24   in by Defendants.  Therefore, such improper activities and violations constitute a

25   nuisance *per se*.

26       68.    Defendants have failed to comply with federal, state, local, and

27   common law.

28       69.    Torres has sustained special injury as a further direct and proximate

-11-

result of the alleged private nuisance *per se* created by Defendants, including damage to the Property.

70.    Defendants caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of solid wastes, hazardous wastes, wastes, and hazardous substances in the environment in, at, and around the Site, including the waters of the State of California, because each Defendant released or otherwise discarded those contaminants during their industrial and commercial operations or controlled the property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

71.    Defendants' acts and omissions contributed to or caused releases of hazardous substances, hazardous wastes, and/or solid wastes in, at, and around the Site, which have interfered with the Torres' free use and enjoyment of their Property.

72.    The continuing nuisance complained of is abatable and Torres has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

73.    Torres did not consent to Defendants' conduct in causing and contributing to the private nuisance.

74.    Defendants are strictly and jointly and severally liable for abatement of the private nuisance.

75.    As a direct and proximate result of the acts, omissions, and conduct of each of the Defendants, Torres has suffered and continues to suffer damages as alleged herein.

76.    Torres is entitled to injunctive relief restraining and enjoining Defendants and requiring each of them, jointly and severally, promptly and competently to take such action as may be necessary to abate the alleged private nuisance and to reimburse him for all past and future monitoring and investigation

1  costs.

2  ## FOURTH CAUSE OF ACTION
   ### (Negligence)
3  ### (Against All Defendants)

4  77.  Torres realleges and incorporates by reference the allegations set forth

5  above in paragraphs 1 through 76, inclusive, as though set forth in full herein.

6  78.  The alleged contamination and resulting monitoring and investigation

7  costs were due, at least in part, to the negligence of Defendants, and each of them,

8  in their acts, omissions, and conduct, and each Defendant's negligence proximately

9  caused the contamination.

10  79.  At various times from the 1970s to 2006 Defendants were in

11  possession and control of the Property and had a duty to maintain the real property

12  in good repair and condition free from any hazardous waste.

13  80.  At various times from the 1970s to 2006 Defendants breached their

14  duty to Torres in that they negligently maintained, controlled, and used the Property

15  and caused such property to go into serious disrepair and caused contamination in

16  the soil and the water table underneath.

17  81.  By virtue of the facts and circumstances of the contamination in and

18  around the Site, as alleged herein, the doctrine of *res ipsa loquitur* is applicable to

19  the claim against each of the Defendants.  Under such doctrine, the burden of

20  proving that Defendants' operations were free from all negligence in connection

21  with the releases of PCE at the Site is placed on Defendants and the burden of

22  proving freedom from liability in connection with the contamination is placed on

23  Defendants.  In the event any or all of Defendants fail to sustain their respective

24  burdens, they are legally responsible for the damages asserted herein.  Under the

25  circumstances, the contamination of the soil, soil vapor, indoor air, and

26  groundwater at and around the Site would not have happened but for negligence on

27  the part of Defendants, their agents, servants, and employees, in the manner in

28  which they conducted their respective operations.  On information and belief,



-13-

releases of contaminants would not have occurred absent some form of negligence and the releases of the contaminants were caused by something within the exclusive control of Defendants.

82.   In the alternative to the allegation that the doctrine of *res ipsa loquitur* is applicable against Defendants, it is alleged that the contamination and resulting property damage and monitoring and investigation costs were due to the negligence of Defendants in their operations and that each of the Defendants is guilty of negligence proximately causing the contamination.

83.   Defendants, while owning, controlling, occupying, and/or conducting operations, owed a duty to Torres to use, store, maintain, monitor, and remove PCE in a safe and careful manner.  Defendants also owed a duty to Torres to avoid storing, disposing of, releasing, or allowing to be released any contaminants in a manner that would cause injury to Torres, the public, or the environment.

84.   Defendants breached their duties by negligently, carelessly, recklessly, and illegally using, storing, handling, recycling, transporting, and discharging PCE in a way that contaminants were released into the environment.

85.   Defendants, and each of them, breached their duties by negligently, carelessly, recklessly, intentionally, and illegally delivering, storing, maintaining, monitoring, transferring, and transporting PCE in such a way that the contaminants were released into the environment.

86.   Defendants failed to promptly and diligently contain and clean up the alleged contamination.

87.   The release or disposal of PCE, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, Civil Code sections 3479-3480, California Code of Civil Procedure section 731, California Penal Code sections 372 and 374.8, Los Angeles County Municipal Code,

including Chapters 11.02.300, 11.70, 12.52, 12.60, 12.64, 13.90.050 and 22.60.350, and City of Los Angeles Municipal Code, including Sections 31, 54.02–54.04, 58.02 64 and 190, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants.  Therefore, such improper activities and violations constitute a negligence *per se*.

88.    The injury and damages that Torres complains of herein resulted from the kind of occurrence the statutory provisions set forth above were designed to prevent.

89.    Torres is part of the class of persons the statutory provisions were intended to protect.

90.    Defendants have failed to comply with federal, state, local, and common law.  As a direct and proximate result of Defendants' failure to comply with applicable statutory provisions, Torres has incurred and will continue to incur expenses, losses, injury, and damages, including consequential, incidental, and general damages to be proven at trial.

91.    The above-described acts, omissions, and conduct of Defendants, including the negligent and intentional acts committed by Defendants, were without the consent or knowledge of, and were against the will of, and in violation of the rights of, Torres.

### FIFTH CAUSE OF ACTION
#### (Continuing Trespass)
#### (Against All Defendants)

92.    Torres realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 91, inclusive, as though set forth in full herein.

93.    Defendants, without the consent or knowledge of Torres, released hazardous substances and knew or should have known that any such release would contaminate the soil, soil vapor, groundwater, and indoor air at, beneath, and around the Site; and that unless the release was immediately contained and cleaned

up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

94.    Unless Defendants are ordered immediately to investigate and clean up the alleged contamination of the soil, soil vapor, groundwater, and indoor air, it will be necessary for Torres to commence many successive actions against Defendants to secure compensation for the damages sustained, thus requiring a multiplicity of suits.

95.    Torres has no adequate remedy at law for the injuries suffered by reason of the acts, omissions, and conduct of Defendants and by reason of the trespass committed by them, and this Court should grant injunctive relief to compel Defendants immediately to investigate and clean up the alleged contamination of the soil, soil vapor, groundwater, and indoor air at, beneath, and around the Site.

96.    As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing trespass caused thereby, Torres has suffered and continues to suffer damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial.

**SIXTH CAUSE OF ACTION**
**(Equitable Indemnity)**
**(Against All Defendants)**

97.    Torres realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 96, inclusive, as though set forth in full herein.

98.    The liability, if any, that Torres may have to any person or entity, including, without limitation, any Defendants, any government or regulatory agency, under any law, regulation, or common law principle, relating to the contamination at the Site, is the result, in whole or in part, of the acts or omissions of Defendants.

99.    As between Torres and Defendants, Defendants are solely responsible for all costs and expenses to investigate and clean up the contamination at and around the Site.

100.   As between Torres and Defendants, Defendants are responsible for any legal or administrative actions that have been brought, or may be brought in the future, by any public or private persons concerning or related to the presence of the contaminants at and around the Site.

101.   In the event that Torres is adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the presence of contaminants at and around the Site, brought against Torres by any persons or entities, public or private, such liability is purely secondary, imputed, or technical. Primary and actual liability attaches to Defendants and is a direct and proximate result of the acts, omissions, and conduct of Defendants.

102.   As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Defendants are bound and obligated to indemnify and hold harmless Torres from and against all costs, arising out of, or relating to the alleged contamination at and emanating from the Property, and any other costs they have incurred or will incur in the future.

**SEVENTH CAUSE OF ACTION**
**(Contribution)**
**(Against All Defendants)**

103.   Torres realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 102, inclusive, as though set forth in full herein.

104.   Section 1432 of the Civil Code provides in pertinent part: "a party to a joint, or joint and several obligation, who satisfies more than its share of the claim against all, may require a proportionate contribution from all the parties joined with him."

105.   As a direct and proximate result of Defendants' releases of hazardous substances into the environment, as alleged above, Torres has and will continue to incur monitoring and investigation costs for cleanup of the contamination at the Site.

106.   Torres has and will incur more than their fair share of response costs

for the hazardous substances at the Site.

107.   As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Torres is entitled to contribution from Defendants for any and all response costs Torres has incurred and will continue to incur in connection with the contamination.

### EIGHTH CAUSE OF ACTION
### (Ultrahazardous Activity)
### (Against All Defendants)

108.   Torres realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 107, inclusive, as though set forth in full herein.

109.   Defendants engaged in the ultrahazardous activity of handling, storing, transporting, and releasing hazardous substances, hazardous wastes and/or solid wastes into the soil and groundwater, notwithstanding the fact that the toxic materials are a serious and substantial risk of harm to health, including cancer, liver disease, and death.  Handling, storing, transporting, and releasing toxic materials is unsafe and harmful, even when the utmost care is utilized.

110.   Defendants' handling, storage, transportation, and releases of hazardous substances, hazardous wastes, and/or solid wastes as alleged herein necessarily involves a risk of serious harm which cannot be eliminated by the exercise of utmost care and is not a matter of common usage.

111.   As a direct and proximate result of this ultrahazardous activity, Torres has incurred and will continue to incur expenses, losses, injury, and damages as set forth herein.

### NINTH CAUSE OF ACTION
### (Cost Recovery under California's Hazardous Substance Account Act)
### (Against All Defendants)

112.   Torres realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 111, inclusive, as though set forth in full herein.

113.   The Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), Health & Safety Code § 25300 *et seq.*, was enacted to encourage the



expedient cleanup of hazardous substances in the environment.  In furthering this goal, the California Legislature included the statutory right of contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

114.  Health & Safety Code § 25363(e) provides that "[a]ny person who has incurred monitoring and investigation costs in accordance with [HSAA] . . . may seek contribution or indemnity from any person who is liable pursuant to [HSAA]."

115.  A "liable person" is defined in Health & Safety Code § 25323.5(a) as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

116.  "Those persons described in section 107(a)" of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility.  42 U.S.C. § 9607(a).

117.  Each Defendant is a "person" within the meaning of Health & Safety Code §§ 25319 and 25323(a).

118.  Each Defendant is a "liable person" as defined in Health & Safety Code § 25323.5(a) and 42 U.S.C § 9607(a).

119.  As a result of the release or threatened release of hazardous substances, Torres has incurred monitoring and investigation costs taken in accordance with the HSAA and will incur costs for monitoring and investigation of the soil, soil vapor, groundwater, and indoor air.

120.  Torres has given the Department of Toxic Substances Control notice of the commencement of this action, as required by section 25363(e) of the Health & Safety Code.

121.  As a direct and proximate result of the actions and omissions of Defendants, as alleged herein, and due to the strict liability imposed by the HSAA,

Torres is entitled to contribution from Defendants under Health & Safety Code § 25363 for all monitoring and investigation costs they have incurred or will incur in the future.

**TENTH CAUSE OF ACTION**
**(Declaratory Relief)**
**(Against All Defendants)**

122.   Torres realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 121, inclusive, as though set forth in full herein.

123.   An actual dispute and controversy has arisen and now exists among the parties to this action concerning their respective rights and duties in that Torres contends, and Defendants deny, that Defendants are responsible for the alleged contamination at the Site, and are obligated to pay for the costs of the investigation and cleanup.

124.   Because the extent and magnitude of the contamination at the Site are not fully known at this time, and the investigatory and monitoring works are ongoing, Torres will incur necessary monitoring and investigation costs, including but not limited to investigatory expenses and attorneys' fees in the future.

125.   Torres desires a judicial determination of their rights and duties and a declaration that Defendants are liable to Torres for all costs incurred or to be incurred by Torres at the Property and that Defendants are liable for the cleanup of the alleged contamination at the Site.

126.   Torres is entitled to a declaratory judgment establishing the liability of Defendants for such monitoring and investigation costs for the purpose of this and any subsequent action or actions to recover further monitoring and investigation costs.

127.   A judicial declaration is necessary and appropriate under the present circumstances in order that Torres may ascertain their rights and duties.

///

**ELEVENTH CAUSE OF ACTION**
**(Professional Negligence)**
**(Against EFI Global, Inc.)**

128.   Plaintiffs repeat and incorporate each and every allegation contained in paragraphs 1 through 127, inclusive, as though fully set forth herein.

129.   At all relevant times herein mentioned, Defendant EFI Global, Inc. ("EFI"), was and now is a professional corporation and an engineering firm employing individuals certified by the State of California as engineers and geologists and held and holds itself out to be skilled in its profession in conducting Phase I and Phase II Environmental Site Assessments to evaluate potential environmental hazards, including evaluations of whether the historical records of properties indicate the need for further study, testing, and analysis to determine whether toxic and hazardous substances exist on such properties.

130.   EFI, while conducting Phase I and Phase II Environmental Site Assessments, owed a duty to Torres to use such skill, prudence, and diligence as other members of its profession commonly possess.

131.   In or about February 2006, EFI conducted a site inspection "to identify current hazardous substance use and hazardous substance storage and to attempt to identify evidence of past hazardous substance use and hazardous substance storage" on the Property.

132.   On March 20, 2006, EFI issued the Phase I Environmental Assessment Report that identified "hazardous substances and petroleum products, storage tanks, odors, pools of liquid, drums, hazardous substances and petroleum products, unidentified substance containers, PCBs . . ." among other hazardous substances at the Property in connection with a "three-stage industrial wastewater clarifier." However, EFI concluded that the 2006 assessment "revealed no evidence of recognized environmental conditions in connection with the property with the exception of [the] three-stage industrial wastewater clarifier . . . and [the] database listing indicating a waste UST . . . at the site."   EFI provided no further

recommendation or indication of the substantial PCE contamination on the Property. EFI did not recommend that soil vapor be tested for PCE, though further investigation would have shown the seriousness of the problem. EFI's failure to recommend soil vapor testing was a deviation from the standard of care and due diligence owed to Torres.

133. In reliance on the 2006 Phase I, Torres expended funds and incurred debt and proceeded to close the escrow for the purchase of Parcels B and C.

134. EFI, in preparing the 2006 Phase I and in rendering opinions and recommendations to Torres negligently and carelessly performed the preparation of the 2006 Phase I. EFI, in rendering opinions and recommendations to Torres, negligently and carelessly performed the evaluation of the subsurface conditions of the Property, especially in light of the detection of PCE in the soil at the Property and by not performing soil vapor testing.

135. As a direct and proximate result of the professional negligence of EFI, Torres has suffered damages in an amount not fully known by Torres at this time, but reasonably believed by them to be in excess of the cost of cleaning the toxic and hazardous materials from the Property, the cost of compliance with governmental orders, delays and additional costs or fees of refinancing, diminution in value, and such other consequential damages the actual nature or amount of which is not yet known to Torres.

## PRAYER FOR RELIEF

WHEREFORE, Torres respectfully requests that judgment be entered in their favor for the following:

1. For a preliminary and permanent injunction requiring Defendants to undertake at their sole cost and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP") at 40 C.F.R. Part 300, all actions necessary to investigate and abate the nuisance conditions and endangerments to health or the environment that may be presented by Defendants'

use and disposal of "hazardous substances" as alleged above.

2.    For an order requiring Defendants to undertake at their sole cost all actions necessary to investigate and remediate the alleged contamination;

3.    For a declaration that Defendants are liable under CERCLA for all past, present, and future response costs and other costs which may be incurred by Plaintiff at the Site.

4.    For a declaration that Defendants are liable under HSAA § 25363(e) and are liable to Plaintiffs in contribution and/or indemnity under HSAA § 25363(e) for all past, present, and future response costs and other costs which may be incurred by Plaintiffs at the Site.

5.    For compensatory and consequential damages;

6.    For an award to Plaintiffs for their costs of litigation, including attorneys' fees and expert witness fees pursuant to Civ. Proc. Code §§ 1021.5 and 1021.6 and written contract;

7.    For exemplary damages against Defendants according to proof;

8.    For punitive damages against Defendants according to proof;

9.    For prejudgment and post-judgment interest;

10.   For all costs of suit herein;

11.   For such other and further relief as this Court deems just and proper.

JURY TRIAL DEMAND

Torres hereby demands trial by jury of any and all issues so triable.

DATED: May 31, 2017                  PALADIN LAW GROUP® LLP


                                     By:   /s/  *Bret A. Stone*
                                        Bret A. Stone
                                        Counsel for George and Roberta Torres

