UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| GEORGE TORRES et al., | Case No. 2:17-cv-04059-MCS-JEM |
|---|---|
| Plaintiffs, | **AMENDED ORDER GRANTING MOTION IN LIMINE (ECF NO. 416), DENYING EX PARTE APPLICATION TO CONTINUE TRIAL AND FOR LEAVE TO AMEND EXPERT WITNESS REPORTS (ECF NO. 426), GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT (ECF NO. 410), AND GRANTING MOTION TO WITHDRAW (ECF NO. 442)** |
| v. | |
| HAROLD IGDALOFF et al., | |
| Defendants. | |
| AND RELATED CROSS-ACTIONS. | |

The Court held a final pretrial conference and heard several motions on March 14, 2022. ECF No. 449. This order resolves the various motions heard at the March 14 hearing. The Court will issue a separate final pretrial conference order.

**I.    MOTION IN LIMINE (ECF NO. 416)**

Union Pacific Railroad Company moved in limine to prohibit Defendants Harold Igdaloff, Estate of Evelyn Igdaloff, and Igdaloff 1993 Family Trust, by and through its trustee, Harold Igdaloff (together, "Igdaloffs"), from introducing any evidence supporting their arguments, objecting to Union Pacific's evidence, and maintaining

defenses at trial. MIL, ECF No. 416; *see also* MIL Mem., ECF No. 416-1. The Igdaloffs did not oppose the motion.

Hary Fangary, the attorney for the Igdaloffs, did not meaningfully participate in pretrial discussions. On December 1, 2021, the parties conducted a Local Rule 16-2 conference. Mr. Fangary declined to participate and stated he was only there to listen. Dorsi Decl. ¶ 2, ECF No. 416-2. On December 2, 2021, Union Pacific's attorneys emailed Mr. Fangary a list of the action items discussed at the December 1 meeting. Mr. Fangary did not substantively respond to any of the action items raised in that email. *Id.* ¶ 3. On December 6, Union Pacific's attorneys emailed Mr. Fangary and left him a voicemail regarding the pretrial discussions. *Id.* ¶¶ 4–5. Mr. Fangary responded on December 7 that he would seek to continue trial and that he was not prepared to engage further in pretrial discussions. *Id.* ¶ 6. Following several more email communications, the parties once again held a Local Rule 16-2 conference in person on December 10, 2021. Mr. Fangary did not participate substantively despite attending. *Id.* ¶ 10. On December 14, 2021, Mr. Fangary did not substantively participate in a meet and confer call regarding pretrial documents. *Id.* ¶ 12. On January 31, 2022, following the Court granting a continuance of trial and pretrial deadlines, Union Pacific's attorneys emailed Mr. Fangary regarding his clients' missing pretrial disclosures. *Id.* ¶ 14. Mr. Fangary did not reply until February 9, 2022, stating he was busy and would get back to Union Pacific's attorneys the next day. *Id.* ¶ 17. Mr. Fangary did not respond by the next day. *Id.* Following further emails, Mr. Fangary stated he was hopeful the Court would continue pretrial deadlines further and stated he would "have some explaining to do." *Id.* ¶ 19.

Mr. Fangary's failure to participate substantively in pretrial discussions has left Union Pacific unaware of which witnesses the Igdaloffs will call, which cross-claims or affirmative defenses they will pursue, which exhibits they will use, or whether they will stipulate to the admissibility of any exhibits. *Id.* ¶ 20. Following the filing of this motion, the Court cautioned the Igdaloffs that they did not file pretrial documents and

warned them sanctions could be imposed for failure to file them. ECF No. 435. To date, the Igdaloffs have only filed a status report regarding settlement. ECF No. 427. They have not complied with any other aspect of the Court's scheduling order regarding pretrial submissions. ECF No. 315. Notably, the Igdaloffs have not even opposed this motion seeking drastic sanctions.[1]

At the hearing, Mr. Fangary did not provide an adequate explanation for his failure to meaningfully participate in pretrial discussions with the other parties. While the Court understands that Mr. Fangary faced several legitimate issues impeding his representation of the Igdaloffs, the Court notes that Mr. Fangary had the benefit of a temporary conservatorship over Mr. Igdaloff from December 9, 2021 to February 18, 2022. Fangary Decl. ¶¶ 16–17, ECF No. 426-1. During this time, Mr. Fangary could have filed pretrial documents or substantively engaged in pretrial conversations with opposing counsel. At a minimum, during this time Mr. Fangary could have presented the Court with a motion to withdraw as counsel or another motion to continue the date of trial. The failure to do this while benefitting from a temporary conservatorship that alleviated the problems with representing his client is not excusable.

Federal Rule of Civil Procedure 16(f) provides that "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . is substantially unprepared to participate—or does not participate in good faith—in the [pretrial] conference . . . ." Fed. R. Civ. P. 16(f)(1). The sanctions referenced in Rule 37 include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Other courts have approved prohibiting parties from introducing evidence or witnesses as a sanction for failure to comply with pretrial and pre-hearing orders. *In re Maurice*, 21 F.3d 767, 771–73 (7th Cir. 1994); *In re Khan*, 321 B.R. 709, 711–12 (Bankr. N.D. Ill. 2005) (limiting a disobedient party to

---

[1] Under Local Rule 7-12, this operates as consent to granting the motion.

cross-examination and argument); *cf. Spinks v. County of Los Angeles*, No. CV 10-7432-JFW (JEMx), 2011 WL 5870047, at *2–3 (C.D. Cal. Nov. 23, 2011) (dismissing a case for failure to file pretrial documents).

The Court concludes that Union Pacific's requested sanctions are appropriate. Mr. Fangary has been given ample opportunity to participate in pretrial discussions and to file appropriate documents, including notice of this motion in limine and a warning from the Court that failure to file pretrial documents could result in sanctions. Allowing the Igdaloffs to affirmatively pursue their claims or defenses would not be just under the circumstances because Mr. Fangary refused to identify the cross-claims or affirmative defenses he would pursue at trial. Dorsi Decl. ¶ 20. The Igdaloffs' answer identified thirty-one affirmative defenses. Answer, ECF No. 354. Permitting the Igdaloffs to cross-examine witnesses without having given Union Pacific adequate notice of which claims and defenses they will pursue at trial would be unfair to Union Pacific.

The Court grants the motion. The Igdaloffs shall not present any evidence for any claim or defense, shall not object to any of Union Pacific's evidence, and shall only be permitted to cross-examine Union Pacific's witnesses.

## II.  EX PARTE APPLICATION TO CONTINUE (ECF NO. 426)

After failing to file pretrial documents by the February 21, 2022 deadline, the Igdaloffs applied ex parte to continue trial and to submit new expert reports. Appl., ECF No. 426. Union Pacific opposed the application. Opp'n to Appl., ECF No. 432.

Ex parte applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an ex parte application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

While the Igdaloffs' case would be prejudiced if the Court heard this application as a motion to continue under regular procedures due to the late date it was submitted, the Igdaloffs are not without fault in creating the crisis. The Igdaloffs move to continue trial because Mr. Igdaloffs' mental and physical impairment has meant he cannot communicate with Mr. Fangary effectively to prepare for trial. Appl. 2–6. Other facts demonstrate that this emergency was avoidable, though. Harold Igdaloff was under a temporary conservatorship from December 9, 2021 to February 18, 2022. *Id.* at 5. Mr. Fangary could have easily brought a motion to withdraw as counsel or substantively participated in pretrial discussions with other parties during this time with the benefit of a temporary conservatorship. His failure to do so during these two months means the crisis occasioning this ex parte application is the fault of Mr. Fangary and the Igdaloffs and has occurred as the result of inexcusable neglect. The Court thus denies the application with respect to continuing the trial date.

The Court denies the request to designate additional experts for the same reasons it previously denied a similar request. ECF No. 394, at 2.

The Court denies the application.

### III.  MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT (ECF NOS. 410, 437)

Union Pacific brought a motion for determination of good faith settlement between it, Estate of Jerome L. Mariam, deceased, Federal Insurance Company, and Production Clutch Exchange. Mot. for GFS, ECF No. 410; *see also* GFS Mem., ECF No. 410-1. The Igdaloffs opposed the motion, GFS Opp'n, ECF No. 438, and Union Pacific replied, GFS Reply, ECF No. 443.[2] Estate of Mariam joined the motion. ECF

---

[2] The Igdaloffs also filed a request that the Court take judicial notice of two of this Court's prior orders in this case and of a United States Government Accountability Office report. ECF No. 441. The Court need not take judicial notice to consider prior orders from this case, *see Gerritsen v. Warner Bros. Ent. Inc.* 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015), and denies the request for judicial notice of the report as moot

1  No. 437.

2  To facilitate early and complete settlement of private cost-recovery actions in multi-party litigation, a federal court may determine that the settlement of a state-law claim was made in good faith under California Code of Civil Procedure sections 877 and 877.6. *See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) (affirming district court's application of Cal. Civ. Proc. Code § 877, which constitutes substantive state law); *In re Heritage Bond Litig.*, 546 F.3d 667, 680 (9th Cir. 2008) (discussing purpose of Cal. Civ. Proc. Code § 877.6).

To determine whether a settlement was made in good faith, courts weigh the following factors: (1) "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "the allocation of settlement proceeds among plaintiffs"; (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial"; (5) "the financial conditions and insurance policy limits of settling defendants"; and (6) "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499 (1985). If the settling parties make a prima facie showing of good faith, the burden of proof shifts to the party contesting the settlement to demonstrate that "the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Id.* at 499–500; *accord City of Grand Terrace v. Superior Ct.*, 192 Cal. App. 3d 1251, 1261 (1987).

The *Tech-Bilt* factors weigh in favor of a determination of good faith settlement. After significant discovery, investigation, consultation with experts, participation in mediation, substantive rulings by the Court, and motion practice, Union Pacific, Estate of Mariam, Federal Insurance, and Production Clutch agreed to settle claims between them for a payment of $350,000 from Federal Insurance to Union Pacific. Bell Decl.

---

because it would not affect the outcome of this order.

6

¶ 19, ECF No. 410-2. Union Pacific estimates the total cost of remediation to range between $8.6 and 9.2 million, including $3 million already spent on cleanup costs. GFS Mem. 12. The parties' experts determined that Estate and Mariam should have an allocation share of 30.86% and determined Production Clutch should have an allocation share of 5.26%. *Id.* at 13. The settlement amount of $350,000 means Federal Insurance, Production Clutch, and Estate of Mariam will pay 3.8–4.1% of the total estimated remediation costs to Union Pacific. *Id.* at 13. While Union Pacific admits that this settlement amount is low, the record supports this low settlement amount. Estate of Mariam and Production Clutch are insolvent. *Id.* at 14–15. Federal Insurance allegedly holds a $1.5 million insurance policy, but that policy likely does not cover any allocation shares in the current suit. First, no party has located a copy of the insurance policy between Estate of Mariam and Federal Insurance. *Id.* at 18. At the hearing, the parties disclosed that the only proof of insurance coverage is the existence of brokerage certificates. Federal Insurance denies that these certificates are valid or that they support the existence of an insurance policy. Second, any insurance policy would likely only cover "sudden and accidental" releases. *Id.* Union Pacific admitted at the hearing, against its own interest, that the evidence in this case supports an opposite finding. Indeed, Union Pacific's own expert testified there is no sudden or accidental release in this case. *Id.* at 19 (citing deposition testimony). Thus, the financial condition of the parties supports this settlement amount. Finally, there is no evidence of collusion, fraud, or tortious conduct aimed to injure the nonsettling parties' interests. *See* Bell Decl. ¶ 19. Thus, the Court finds the settling parties have made a prima facie showing of good faith.

The Igdaloffs argue against a determination of good faith settlement for three reasons. First, the settlement amount is too low considering the settling parties' estimated proportionate share of the remediation costs. Second, remediation costs may exceed Union Pacific's estimate of $8.6 to 9.2 million. Third, the proposed settlement is collusive and aimed specifically at harming the Igdaloffs. GFS Opp'n 1–2.

The Igdaloffs argue that the presence of an insurance policy from Federal Insurance means that Estate of Mariam, Production Clutch, and Federal Insurance can pay much more than the small share here. *Id.* at 5–6. For the reasons discussed above, though, a contribution suit by Union Pacific against Federal Insurance is probably hopeless. The Igdaloffs also argue that remediation costs are likely to be much higher, citing a federal government report indicating remediation costs usually exceed Environmental Protection Agency cost estimates. *Id.* at 6–7. This report does not establish that "the settlement is so far 'out of the ballpark' in relation to [the *Tech-Bilt*] factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499–500. Instead, it merely establishes that the $8.6 to 9.2 million estimate *might* be incorrect. The Igdaloffs do not provide any other number the Court can use as an estimate for what the total liability could be. Thus, the Court finds the Igdaloffs have not shown the settlement is so far out of bounds that it is not a reasonable reflection of the settlors' proportionate liability.

The Igdaloffs also argue there is fraud and collusion that would prevent a determination of good faith. They argue they were not present during the settlement negotiations and thus that the settlement is designed to unfairly saddle the Igdaloffs with most of the liability in this action. GFS Opp'n 8–9. The Igdaloffs have been working with the same mediator who facilitated this settlement, though. ECF No. 427. Additionally, the failure to include the Igdaloffs in settlement negotiations was the result of basic negotiation strategies, not a desire to tortiously injure the Igdaloffs. Here, the natural explanation for this settlement is that Union Pacific wished to simplify the case by eliminating claims from insolvent parties. This is an explanation other than fraud or collusion.

Union Pacific requests that the Court apply Federal Insurance's payment *pro tanto* in determining the parties' equitable shares at trial. The Ninth Circuit has given courts discretion on whether to apportion shares from settlements *pro rata* or *pro tanto*. *AmeriPride Servs. Inc. v. Tex. E. Overseas Inc.*, 782 F.3d 474, 487–88 (9th Cir. 2015).

Because this is a factually complex case, the Court declines to rule on this request at this time and will determine after the bench trial how to account for all settlements in this action. *See id.*

The Court grants the motion. The Court determines that the settlement between Union Pacific, Federal Insurance, Estate of Mariam, and Production Clutch is a good faith settlement within the meaning and effect of California Code of Civil Procedure Section 877 and 877.6.

Under California Code of Civil Procedure Section 877.6(c), "[a] determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." This determination bars any party that has notice. Cal. Code Civ. Proc. § 877.6(a); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1266 (9th Cir. 2010).

As a result of the good faith settlement determination and the bar on contribution, the Court:

1. Dismisses with prejudice all cross-claims against Estate of Mariam and Production Clutch brought by Union Pacific, ECF No. 340, and the Igdaloffs, ECF No. 91–93; and

2. Bars all claims or actions seeking contribution from Estate of Mariam, Federal Insurance Company, and Production Clutch by other non-settling parties.

### IV. MOTION TO WITHDRAW (ECF NO. 442)

Following an alleged total breakdown in the client-attorney relationship, Mr. Fangary moves to withdraw as the attorney for the Igdaloffs. Mot. to Withdraw, ECF No. 442. Union Pacific opposed the motion, Opp'n to Mot. to Withdraw, ECF No. 445, and Fangary filed a reply, Reply to Mot. to Withdraw, ECF No. 447.

Parties seeking to withdraw from representation may only do so by leave of court. C.D. Cal. R. 83-2.3.2. The motion must be supported by good cause. *Id.* The decision

9

to grant or deny leave to withdraw is within the discretion of the district court. *See LaGrand v. Stewart*, 133 F.3d 1253, 1269 (9th Cir. 1998). In evaluating a motion to withdraw, courts consider: "(1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case." *Clasby v. Ivanovic*, No. 2:18-cv-02313-ODW (JPRx), 2020 U.S. Dist. LEXIS 205314, at *4 (C.D. Cal. Nov. 3, 2020) (internal quotation marks omitted).

These factors support granting the motion. Mr. Fangary presents excellent reasons to withdraw. Due to his client's failing health, including a fall that resulted in hospitalization on June 28, 2021, Mr. Fangary has been unable to meaningfully communicate with Mr. Igdaloff. Mot. to Withdraw 2. Mr. Igdaloff cannot manage his financial affairs and cannot remember important conversations. *Id.* Furthermore, Mr. Igdaloff has not paid his legal fees and has resisted cooperation throughout the litigation. *Id.* at 3–4. Mr. Igdaloff also would often not respond to Mr. Fangary's attempts at communication. *Id.* at 5. At the hearing, Mr. Fangary represented that despite phone calls, emails, and mailed communications to Mr. Igdaloff's house, Mr. Igdaloff has not responded to Mr. Fangary's communications for several months.

Superior Court Judge Gus T. May granted a temporary conservatorship on December 9, 2021. This temporary conservatorship expired on February 18, 2022, though, leaving Mr. Fangary once again to attempt to represent Mr. Igdaloff without his help. *Id.* at 7–8. Several of the California Rules of Professional Conduct counsel withdrawal in this instance. Rule 1.16(b)(4) states that a lawyer may withdraw from representing a client if "the client . . . renders it unreasonably difficult for the lawyer to carry out the representation effectively." Here, Mr. Igdaloff's inability or refusal to respond to Mr. Fangary's communications has made it impossible for Mr. Fangary to effectively represent him for several months. Rule 1.16(b)(5) states that a lawyer may withdraw if "the client breaches a material term of an agreement with, or obligation[] to[,] the lawyer relating to the representation, and the lawyer has given the client a

reasonable warning after the breach that the lawyer will withdraw unless the client fulfills the agreement or performs the obligation." Mr. Igdaloff breached his obligation to pay for the representation. Although failure to pay is not alone a sufficient basis to grant a motion to withdraw, C.D. Cal. R. 83-2.3.2, it is a factor that supports granting such a motion. Rule 1.16(b)(9) permits a lawyer to withdraw if "a continuation of the representation is likely to result in a violation of these rules or the State Bar Act." Rule 1.4 requires the attorney to keep the client informed of any material developments in a case. Due to Mr. Igdaloff's failure to understand his affairs and failure to respond to Mr. Fangary's attempted communications, Mr. Fangary cannot effectively communicate any developments in this case to his client. The first factor thus supports granting the motion.

The other factors similarly indicate the Court should grant the motion. Because the Court granted Union Pacific's motion for sanctions, all that the Igdaloffs can do at this point in the case is cross-examine Union Pacific's witnesses and make closing arguments. Trial will not begin until April 19, and there is sufficient time for the Igdaloffs to find new counsel and for their new counsel to prepare for their limited role at the bench trial. Thus, the withdrawal will cause no parties to face prejudice, will not harm the administration of justice, and will not delay the resolution of the case. The Court thus grants the motion.

Mr. Fangary shall serve this order upon the Igdaloffs and upon Ronald Ostrin and Marshal Oldman, the attorneys representing Mr. Igdaloff in the conservatorship action. The Court also orders Mr. Fangary to provide contact information for the Igdaloffs within seven days. The Court cautions the Estate of Evelyn Igdaloff, deceased, and the Igdaloff 1993 Family Trust that they cannot appear in federal court without representation. *Church of New Testament v. United States*, 783 F.2d 771, 773 (9th Cir. 1986) ("Unincorporated associations . . . must appear through an attorney . . . ."). The Court orders these parties to retain new counsel by April 19, 2022. Failure to do may result in the entry of default. Fed. R. Civ. P. 55(a).

## V.  OTHER PRETRIAL ISSUES

The Court orders that Union Pacific may submit the testimony for Herman Rosen by declaration. If Union Pacific wishes to submit a declaration for direct testimony for Rosen, Union Pacific must do so within two weeks of this order.

## VI.  CONCLUSION

The Court:

- **GRANTS** the Motion in Limine for Evidentiary Sanctions, ECF No. 416;
- **DENIES** the Ex Parte Application, ECF No. 426;
- **GRANTS** the Motion for Determination of Good Faith Settlement, ECF Nos. 410, 437; and
- **GRANTS** the Motion to Withdraw, ECF No. 442.

**IT IS SO ORDERED.**

Dated: April 11, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE