Hany S. Fangary, Bar No. 190555
hany@fangarylaw.com
**FANGARY LAW GROUP**
633 West Fifth Street
57th Floor, Suite 5710
Los Angeles, CA 90071
P: (213) 623-3822
F: (213) 289-2824

Attorneys for Defendants and Cross-Complainants
HAROLD IGDALOFF, ESTATE OF EVELYN IGDALOFF, DECEASED, AND IGDALOFF 1993 FAMILY TRUST

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **GEORGE TORRES**, *et al*.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**HAROLD IGDALOFF**, *et al*.,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS AND CROSS-ACTIONS | CASE NO.: 2:17-cv-04059-MCS (JEMs)<br><br>**MOTION FOR RECONSIDERATION OF AMENDED ORDER GRANTING MOTION IN LIMINE, DENYING EX PARTE APPLICATION TO CONTINUE TRIAL AND LEAVE TO AMEND EXPERT WITNESS REPORTS, GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT, AND GRANTING MOTION TO WITHDRAW**<br><br>[DECLARATION OF HANY S. FANGARY FILED CONCURRENTLY HEREWITH]<br><br>Date: May 30, 2022<br>Time: 9:00 a.m.<br>Crtm: 7C<br><br>The Hon. Mark C. Scarsi<br><br>Action Filed: May 31, 2017<br><br>Trial Date: June 7, 2022 |

**MOTION FOR RECONSIDERATION OF AMENDED ORDER**

## I. INTRODUCTION

Counsel for Defendants and Cross-Complainants, Harold Igdaloff, the Estate of Evelyn Igdaloff, deceased, and the Igdaloff 1993 Family Trust ("Igdaloff Defendants" or "Igdaloff Parties") hereby submits this Motion for Reconsideration ("Motion") of various aspects of the Court's April 11, 2022 Amended Order Granting Motion In Limine, Denying Ex Parte Application To Continue Trial And Leave To Amend Expert Witness Reports, Granting Motion For Determination Of Good Faith Settlement, And Granting Motion To Withdraw ("Amended Order"). This Motion seeks the Court's reconsideration of granting the Motion In Limine and Denying Ex Parte Application To Continue Trial.

This Honorable Court granted the Motion To Withdraw of the Igdaloff Defendants' counsel Hany Fangary of Fangary Law Group ("Fangary"). Thus, by preparing and filing this Motion and related pleadings, Fangary does not at all intend to become further involved in the litigation in this action or the upcoming trial. If so permitted by this Court, Fangary's participation going forward will be limited to addressing issues pertaining to the Amended Order.

This Motion For Reconsideration provides the Court with new facts, as well as additional explanations and evidence in support of, or in opposition to, positions advocated by Union Pacific Union Company ("UPRR") in various pleadings submitted to Court. New facts include 1) the Igdaloff Parties' difficulty in retaining substitute counsel to prepare for trial in this action; 2) the Court's recent Order continuing the trial date to June 7, 2022; and 3) additional evidence and information relating to the relief sought by UPRR and the Igdaloff Parties in the various motions and applications the Court heard prior to issuing the April 11, 2022 Order.

Further, Rule 7-18 of the Local Civil Rules for the Central District of California provides a motion for reconsideration of the decision on any motion may be made on the grounds a manifest showing of a failure to consider material facts presented to the Court before such decision. Facts presented to this Court in counsel declarations and during oral arguments were not taken into consideration by this Court, which constitutes a manifest failure to consider material facts presented to the Court before the Amended Order was issued.

**MOTION FOR RECONSIDERATION OF AMENDED ORDER**

1  Notice of this Motion has been provided to UPRR's counsel on April 25, 2021 by email.
2  Fangary Decl. ¶ 3. Although UPRR's counsel has not yet provided UPRR's position regarding this
3  Motion, the Igdaloff Parties expect that UPRR will oppose this Motion and will seek sanctions against
4  Fangary.

**II.   FACTUAL BACKGROUND**

**1.   Mr. Igdaloff's Mental And Physical Impairment**

The trial in this action is currently scheduled to commence on June 7, 2022. As explained in detail in the Declarations of Hany Fangary ("**Former Fangary Decl**.") and Nancy Igdaloff ("**Igdaloff Decl**.") filed with the Motion for Withdrawal, Mr. Harold Igdaloff suffers from cognitive impairment and lacks contractual capacity, and has been suffering from said impairment for at least the past year or more, and is not able to manage his financial affairs. Copies of the Former Fangary Decl. and the Igdaloff Decl. are attached as Exhibits A and B to Declaration of Hany Fangary ("Fangary Decl.") filed concurrently herewith. Thus, Mr. Igdaloff has not been able to properly manage and give direction regarding this litigation, or to manage his financial affairs so that he can pay for attorneys' fees, the costs of expert witnesses and other litigation related expenses.

At the request of Mr. Igdaloff's daughters, Dr. David W. Trader conducted a comprehensive geriatric psychiatric examination to assess Mr. Igdaloff's general mental capacity, capacity to manage his financial affairs, testamentary capacity, contractual capacity, and susceptibility to undue influence. Dr. Trader concluded, among other things, that Mr. Igdaloff has experienced a significant decline in executive functioning and a modest decline in memory, that Mr. Igdaloff cannot make reasonable, rational decisions involving his finances, and appears to be in modest impairment in cognitive performance. Dr. Trader further concluded, with reasonable medical certainty, that Mr. Igdaloff is substantially unable to manage his own financial resources or resist fraud or undue influence. Dr. Trader also concluded that Mr. Igdaloff has minimal understanding of his financial situation, and has demonstrated an inability to plan, organize, and take actions to manage or direct the management of his assets.

Although information included in Dr. Trader's report have been referenced in various pleadings and declarations in this action, the report itself has not been filed with the Court in this action to protect Mr. Igdaloff's privacy. The Igdaloff Parties may seek the leave of court to file Dr.

Trader's report under seal in order to ensure that the conclusions of Dr. Trader's report are taken into consideration in the Court's ruling in this Motion and other matters in this action.

The Court acknowledged the impact of Mr. Igdaloff's inability to manage his affairs has prevented the Igdaloff Parties from adequately preparing for trial in its December 17, 2021 Order (ECF 392).  The Court also held that the Igdaloff Parties would be irreparably prejudiced in preparing for trial due to Igdaloff's inability to manage his affairs.  Id.  Whereas these facts did not change after the Court issued its December 17, 2021 Order, the Court refused to acknowledge that the appointment of a Temporary Conservator for two months did not resolve these issues because the Temporary Conservator did not agree to sign a retainer agreement with the Fangary Law Group, and did not provide any funding to pay for the Fangary Law Group's already incurred legal fees and costs, or pay for future expenses associated with trial preparation.

The Court denied the Igdaloff Parties ex parte application to continue the trial date in its Amended Order.  In the Igdaloff Parties' Ex Parte Application to Continue Trial Date ("Ex Parte Application"), continuance of the trial date was requested to allow the Igdaloff Parties an opportunity to have a professional fiduciary appointed to manage direct and fund this litigation going forward, and to allow time for the case to be transferred to new counsel (Ex Parte Application 1:27-21), to allow proper management of the litigation and the ongoing settlement negotiations (Id. 7:8-10; 8:20-28; 9:19-20), and to prevent the Igdaloff Parties from being significantly prejudiced in this action as a result of Mr. Igdaloff's cognitive impairment and lack of contractual capacity and his inability to mange his financial affairs.  (Id. 13:14-17).

### 2. Difficulty In Securing Substitute Counsel

The Court granted Fangary's Motion To Withdraw and, pursuant to the Court's direction, Fangary transmitted copies of the Court's original order previously issued on March 13, 2022. Fangary transmitted the March 13, 2022 Order to Mr. Igdaloff, and two of Mr. Igdaloff's counsel, Mr. Ronald Ostrin and Mr. Marshall Oldman on March 13, 2022 via email and Federal Express.  Fangary Decl. ¶ 6.  Prior to forwarding the March 13, 2022 Order to Mr. Igdalff, Mr. Ostrin and Mr. Oldman, Fangary also previously communicated with Mr. Ostrin on February 17, 2022 to inform him that Fangary intends to file the Motion To Withdraw and, therefore, Mr. Igdaloff must identify substitute

**MOTION FOR RECONSIDERATION OF AMENDED ORDER**

1  counsel soon so that this case can be transferred to substitute counsel, in the event the Court granted the Motion To Withdraw.  Id.

   Despite notifying Mr. Ostrin of his intent to file the Motion To Withdraw on February 17, 2021, Fangary did not receive any direction from Mr. Ostrin or Mr. Igdaloff to transfer the files in this action until April 19, 2022.  Fangary Decl. ¶ 7.  Therefore, it took Mr. Igdaloff and his counsel more than two months to identify substitute counsel, and it is not clear if the substitute counsel designated by Mr. Igdaloff intents to serve as trial counsel in this action, or if he intends to merely assist the Igdaloff Parties in settlement discussions.

### 3.  Similar Requests Yield Opposite Results

The Ex Parte Application submitted by Fangary Law Group of 13 pages, and the two supporting declarations, provided ample evidence to substantiate and support the requested relief.  Further, the Ex Parte Application was submitted on February 22, 2022, nearly two months prior to the trial date, which was April 19, 2022.  Yet, the Court denied the Ex Parte Application.

On April 12, 2022, approximately a week prior to the trial date, Mr. Marshall Oldman, the Igdaloff Parties' new counsel, submitted to this Court an ex parte application to continue the trial date to allow the parties to participate in settlement discussions.  The ex parte application was a page and a hlf long, and requested the continuance based on that sole reason.  The Court concluded in its April 14, 2022 Order (ECF 472) that good cause exists to allow the parties to continue to engage in settlement discussions.

## III.   LEGAL ARGUMENTS

### 1.  Reconsideration Of The Court's April 11, 2022 Is Warranted

#### a.  Central District of California Local Rule 7-18

Rule 7-18 of the Local Civil Rules for the Central District of California further provides:

> [a] motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

**MOTION FOR RECONSIDERATION OF AMENDED ORDER**

"Whether to grant a motion for reconsideration under Local Rule 7--18 is a matter within the court's discretion." *Daghlian v. DeVry Univ., Inc.*, 582 F.Supp.2d 1231, 1251 (C.D. Cal. 2007). When new law is established OR – PUT IN LANGAUGE REGARDING CHANGES IN FACTS "that bears on the matters addressed in [a court's] Order," and a party files "a timely motion for reconsideration" of that order under L.R. 7-18, reconsideration will "obviate having to do so on remand, should the parties appeal the Order, and would thereby serve judicial economy." *Humanitarian Law Project v. U.S. Dep't of Treasury*, 484 F.Supp.2d 1099, 1104 (C.D. Cal. 2007), aff'd sub nom. Humanitarian Law Project v. U.S. Treasury Dep't, 578 F.3d 1133 (9th Cir.2009). Thus, where "reconsideration was timely sought and the matter is likely to be appealed, the Court exercises its discretion to reconsider the Order." Ibid. See also Union Pac. R.R. Co. v. Coast Packing Co., 236 F.Supp.2d 1130, 1137 (C.D. Cal. 2002)

### b. Federal Rule Of Civil Procedure 60(b)

The Federal Rules of Civil Procedure allow parties to move for reconsideration of a court's prior rulings under certain circumstances. See *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir.1985); Fed.R.Civ.P. 59(e); Fed.R.Civ.P. 60(b). Federal Rule of Civil Procedure 60(b) "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment;" or "(5) a satisfied or discharged judgment[.]" *School Dist. No. 1J, Multnomah County v. Acands, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir.1991)). In addition, Rule 60(b)(6) allows the Court to reconsider a final judgment or order for "any other reason justifying relief from the operation of the judgment," which courts have interpreted to mean " 'extraordinary circumstances.' " Ibid. (emphasis added); See also *MGA Entm't, Inc. v. Hartford Ins. Grp.,* 869 F. Supp. 2d 1117, 1121 (C.D. Cal. 2012) (Court reconsidered its prior order pursuant to Rule 60(b)(6) "due to an abundance of caution that its decision was not just a compromise, but also bad law," and because "both the movant and nonmovant . . . joined in" motions to reconsider).

"A motion seeking such relief is addressed to the sound discretion of the district court." *Daghlian v. DeVry Univ., Inc.*, 582 F. Supp. 2d 1231, 1250 (C.D. Cal. 2007). "A district court abuses its discretion by denying relief under Rule 60(b) when it makes an error of law or relies on a clearly erroneous factual determination." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir.2009). An

"intervening change in the law" may, under the specific circumstances of a case, constitute an "extraordinary circumstance" justifying an exercise of the court's discretion pursuant to Rule 60(b)(6)." See *Phelps v. Alameida*, 569 F.3d 1120, 1123, 1133-1135 (9th Cir.2009).

### c. Inherent Powers Of The Court

In addition to the Federal Rules of Civil Procedure and Local Rules for the Central District of California, the Court is endowed in all cases over which it has jurisdiction with "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir.2001); *Bucy v. Nevada Const. Co.*, 125 F.2d 213, 217 (9th Cir.1942). The Court's power is "rooted firmly in the common law and is not abridged by the Federal Rules of Civil Procedure" or local court rules. *Santa Monica Baykeeper*, 254 F.3d at 887; JMP Sec. *LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1035 (N.D. Cal. 2012). Indeed, this inherent power is consistent with the Federal Rules of Civil Procedure, which provide, in relevant part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 497 n.3 (E.D. Cal. 2012).

### 2. This Court Should Reconsider Its April 11, 2022 Order Granting UPRR's Motion In Limine And Denying The Request To Continue Trial Date

#### a. The Order Is Based On Incomplete And Misleading Information

UPRR's counsel, presumably intentionally, misrepresented to the Court the reasons for the Fangary Law Group's inability to fully participate in preparation of pretrial disclosures by intentionally omitting "a fact necessary to make the communication considered as a whole not materially misleading" in violation of CRPC Rules 7.1 and 9.4(c). In fact, in the Motion In Limine, UPRR's counsel elected to specifically include a statement made by Fangary, while intentionally omitting a portion of the statement, thus making the portion of the statement materially misleading.

Fangary consistently kept UPRR's counsel, and other counsel and the Court, informed regarding the Conservatorship matter since its commencement on October 1, 2021. Specifically, on December 7, 2021, Fangary informed UPRR's counsel with the following information:

> I checked with my client today regarding the status of the conservatorship action, and she still has not received the letters/orders from the court. She is following up with her conservatorship attorney about that and the attorney is telling her that the court is just slow in processing them, and she does not have them yet. This means that my current client, the conservator, is still not able to access most of the accounts and other assets of Mr. Igdaloff and is yet unable to pay the outstanding bills for this litigation and/or pay any additional funds to pay for additional tasks or to retain additional attorneys and/or experts until she receives the letters/orders from the court. Therefore, I am not prepared to engage in further meet and confer discussions with you at this point until both of these documents are filed, hopefully tomorrow."
>
> Fangary Decl. ¶ 13.

Yet, UPRR's counsel, again presumably intentionally, elected not to provide the Court with Fangary's entire statement. Instead, UPRR's counsel elected to include merely a part of a sentence stating that Fangary was "not prepared to engage in further meet and confer discussions with you at this point until both of these documents are filed, hopefully tomorrow." Motion In Limine 3:8-12. By so doing, UPRR's counsel intentionally concealed from the Court that Fangary clearly explained to UPRR's counsel the reasons for his inability to participate.

Further, Fangary attended the in-person meeting amongst counsel on December 10, 2021, and again informed UPRR's counsel that the Temporary Conservator has not yet received the letters/orders from the court, and therefore she was still unable to pay the outstanding bills for this litigation and/or pay any additional funds to pay for additional tasks and/or to retain additional attorneys until she receives the letters/orders from the court. Fangary Decl. ¶ 8. Yet, UPRR's counsel merely informed that court that "Fangary attended but again did not substantively participate in pre-trial meet and confer discussions or pre-trial disclosures. Motion In Limine 3:16-17. By so doing, UPRR's counsel again intentionally concealed from the Court that Fangary clearly explained to UPRR's counsel the reasons for his inability to participate.

Further, UPRR's counsel requested, several times, that Fangary pay the funds owed to one of UPRR's experts for his deposition fees, which was less than $1,000. Despite Fangary's efforts to secure funds from Mr. Igdaloff to pay various outstanding invoices, Mr. Igdaloff was unable to or unwilling to provide said funds. Fangary Decl. ¶ 9. After several unsuccessful attempts to secure funds from Mr. Igdaloff for months, Fangary informed UPRR's counsel on November 22, 2022 that the reason the expert witnesses' invoice has not been paid was because Mr.Igdaloff has not provided

funds to allow its payment. Id. Accordingly, UPRRs counsel has been aware of the financial issues that were impairing Fangary Law Group's ability to properly prepare for trial.

### b. UPRR's Expectations Are Preposterous

Fangary consistently kept UPRR's counsel informed and updated regarding Mr. Igdaloff's inability to provide funds to manage the litigation in this action and the status of the Conservatorship action, including the status of the Temporary Conservator's inability to have access to Mr. Igdaloff's funds. Fangary communicated to UPPR's counsel, repeatedly, that Mr. Igdaloff has not been paying attorneys' fees and other litigation expenses, and that Fangary cannot fully prepare the case for trial without Mr. Igdaloff or the Temporary Conservator providing funding for Fangary Law Group to retain additional counsel to help in preparation for trial. Fangary Decl. ¶ 10. Therefore, UPRR's counsel's representation in the Motion In Limine that "[i]nstead of using the trial continuance to provide substantive pre-trial disclosures, Igdaloff remained uncooperative" is simply preposterous.

<u>Based on input received from UPRR's counsel, Fangary estimates that UPRR's counsel has billed UPRR more than $2 million in attorneys' fees, expert costs, and other litigation expenses in this action to date</u>. Fangary Decl. ¶ 11. Yet, UPRR's counsel has been informed, repeatedly, that Mr. Igdaloff has not been able to manage this action and to provide the necessary funding to allow Fangary to retain additional counsel to help in trial preparation tasks. It is simply preposterous for UPRR's counsel, after getting paid more than $2 million dollars to prepare for trial in this action, to expect Fangary Law Group Fangary to similarly prepare for trial in this action without funding. Fangary Law Group is not a non-profit entity providing pro bono legal services to Mr. Igdaloff, and does not receive donations or other sources of income to maintain its operations. Thus, just as it preposterous for UPRR to expect its counsel to prepare for trial in this action without getting paid, it is similarly not possible for Fangary Law Group to prepare for trial in this action without getting paid.

### c. This Court's Expectations Are Unrealistic

Through numerous declarations filed in this action, particularly the Supplemental Declaration Of Hany S. Fangary In Support Of Motion For Withdrawal As Counsel For The Igdaloff Defendants ("Supplemental Declaration") filed in this action on March 17, and attached hereto to the Fangary Decl. as <u>Exhibit C</u> Fangary informed the Court that Fangary Law Group has not been paid by Mr. Igdaloff or the Temporary Conservator for its legal fees and litigation costs in this action. Fangary

informed the Court that, other than the $5,000 retainer Mr. Igdaloff paid in 2017, neither Mr. Igdaloff nor the Temporary Conservator, paid the Fangary Law Group for any of its legal fees and litigation expenses incurred in this action.  Fangary Decl. ¶ 12, Exhibit C.  Accordingly, it is absolutely unrealistic for this Court to expect a solo practitioner, after not being paid for all the work done in this action for nearly 5 years, would be obligated, at his own expense, to retain additional attorneys to prepare this case for trial. There is absolutely no logical basis for the Court to expect a lawyer or law firm to work without compensation for almost five years.

How would this Court be able to preside over this action without funding?  It is obviously impossible.  This Court could not function without funding that provides payment for all of the Court's expenses, including payment of the Court's staff, the Court's security services, technical staff, and other expenses.  It would be impossible for this Court to preside over the trial in this action if the court lacks funding to pay for the security guards securing the the building, without the requisite court staff, without a court reporter, and without any funding to pay for the court's other expenses.

How does this Court expect the Fangary Law Group to function differently and, despite not being paid for nearly five years, and so informing the Court repeatedly, to continue to incur significant expenses preparing this case for trial?  How can this Court justify that a law firm is obligated to continue to prepare a case for trial without compensation, which would most likely lead to the demise of said firm.  It is entirely illogical, and is unlikely to be upheld by the Court of Appeals.

Fangary Law Group is unaware of any case law that supports the proposition that a lawyer or law firm should be compelled by the court to continue to work on a case, and fully prepare for trial in the case, without getting paid for nearly five years.

### 3. This Court Failed To Accommodate Mr. Igdaloff's Requests For Accommodations By Persons With Disabilities

#### a. The Requested Accommodation To Mr. Igdaloff Was Warranted Based On Information Provided To The Court

The United States District Court, Central District of California's website provides that "[i]n November of 2012, the Central District of California approved Guidelines for Providing Accommodations for Trial Participants with Communications Disabilities, Jurors, and Members of the Public, which comply with Judicial Conference policy". These guidelines provide that:

-9-

**MOTION FOR RECONSIDERATION OF AMENDED ORDER**

> As adopted in September 1994 and 1995, it is the policy of the Judicial Conference of the United States that all federal courts provide reasonable accommodations for trial participants and jurors with communications disabilities and access to the courts for all segments of the disabled community.
> . . .
> Because the work of the court involves communicating information and <u>effective communication is one of the most important and challenging responsibilities for the Court, depending upon the individual circumstances communications disabilities may include voice problems, speech problems, developmental disabilities, cognition difficulties,</u> learning disorders, autism, brain injury, cerebral palsy, and stroke injuries that impair the exchange of information in all forms, including voice, sound, nonverbal, print, and electronic and information technology. Id. (Emphasis added).

Further, "California Rules of Court, rule 1.100 governs requests for accommodations by persons with disabilities. . . . California Rules of Court, rule 1.100 advances the court policy "to ensure that persons with disabilities have equal and full access to the judicial system. (Cal. Rules of Court, rule 1.100(b).)." *In re Marriage of James & Christine C.*, 158 Cal.App.4th 1261 (2008). *In re Marriage of James M.C. and Christine J.C.*, supra, 158 Cal.App.4th 1261, 70 Cal.Rptr.3d 715 was a marital dissolution, and the wife suffered from bipolar disorder and cancer and, on advice of her psychiatrist, had been hospitalized the day before trial was set to resume. The wife was in propria persona during trial of custody, support, and property issues when she admitted herself at her psychiatrist's recommendation into a hospital for treatment of bipolar disorder. (Id. at pp. 1264–1265, 1269, 70 Cal.Rptr.3d 715.) The wife was hospitalized <u>the day before trial was set to resume</u>. For accommodation of her psychiatric disability, she requested a continuance of the trial, which the court denied out of frustration at the number of continuances already granted in the case. The trial continued in her absence, ending in the court's entry of judgment on the contested issues. (Id. at pp. 1270–1271, 70 Cal.Rptr.3d 715.) On review, the appellate court held the trial court erred in denying a continuance as an accommodation. (Id. at pp. 1264–1265, 70 Cal.Rptr.3d 715.)

California Rules of Court, rule 1.100 is clearly a rule of court that only applies to California courts, not to Federal courts. Similarly, *In re Marriage of James & Christine C.* is a California case.

Therefore, this Court is not obligated to take Rule 1.100 and the Marriage of James & Christine C. into consideration in its ruling denying the Igdaloff Parties' request for continuance of the trial date. However, the Federal Guidelines For Providing Accommodations For Trial Participants With Communications Disabilities, Jurors, And Members Of The Public provides that "it is the policy of the Judicial Conference of the United States that all federal courts provide reasonable accommodations for trial participants and jurors with communications disabilities and access to the courts for all segments of the disabled community." Therefore, similar to the facts in In re Marriage of James & Christine C., this Court should have accommodated Mr. Igdaloff's disability and should have granted the Igdaloff Parties request to continue the trial date.

Instead, this Court initially recognized the impacts of Mr. Igdaloff's congnetive impairment and inability to manage his financial affairs on the Fangary Law Group's ability to prepare for trial, and agreed to continue the trial date in its December 17, 2022 Order. Other than that, this Court has been entirely unaccommodating of the impact of Mr. Igdaloff's disability on counsel's ability to proceed with preparation for trial in this action. This Court's denial of the request for continuance of the trial date and granting UPRR's Motion in Limine are so significantly prejudicial to the Igdaloff Parties, and deprives the Igdaloff Parties form "equal access to the Judicial system."

### b. This Court Has Shown Significant Prejudice Towards Requests Made By The Fangary Law Group As Compared To Other Counsel

#### i. Two Requests For Continuance Based On The Same Grounds Result In Different Rulings

In its December 17, 2021 Order, (ECF No. 394), this Court ruled that:

> "<u>Defendant Harold Igdaloff has clearly not been able to manage his affairs since at least June 2021, and he has exhibited other issues with managing his affairs before then</u>. See, e.g., Fangary Decl. ¶¶ 4–9, ECF No. 390-1 (Igdaloff's attorney expressing concern about his client's ability to manage day-to-day affairs); Igdaloff Decl. ¶¶ 3, 5, 8, 10–11, ECF No. 390-2 (Igdaloff's daughter expressing concern about her father's ability to manage his affairs). <u>The Superior Court of California, County of Los Angeles has even granted Igdaloff's daughter's application for temporary conservatorship over him</u>, although this order is not yet effective.1 Igdaloff Decl. ¶ 22; Req. for Judicial Notice Ex. D, ECF No. 390-3.

<u>Harold Igdaloff's inability to manage his affairs has prevented the Igdaloff parties from adequately preparing for the upcoming trial in this case. The Court finds the Igdaloff parties would be irreparably prejudiced in preparing for trial due to Igdaloff's inability to manage his affairs, and the Court finds the Igdaloff parties bear no fault for this situation. Thus, the Court considers the application with respect to continuing the trial date</u>." Emphasis added.

Despite this ruling, the Court refused to accommodate any other requests made by the Fangary Law Group on behalf of the Igdaloff Parties, even though the facts listed above in the Court's ruling have not changed. In its refusal to grant the last request for continuance the Fangary Law Group applied for on behalf of the Igdaloff Parties, the Court's denial appears to be primarily based on the Court's incorrect assumption that Fangary could have "substantively participated in pretrial discussions with other parties during this time with the benefit of a temporary conservatorship." However, that assumption is incorrect for at least three reasons that Fangary clearly explained to the Court during the March 14, 2022 hearing.

<u>First</u>, while risking potentially violating CRPC Rule 1.6 which precludes attorneys from disclosing confidential information of a client, Fangary informed the Court that the Temporary Conservator never agreed to sign a retainer agreement with the Fangary Law Group. Accordingly, after working for Mr. Igdaloff for more than four years without payment, how can the Fangary Law Group continue to represent the Temporary Conservator, and proceed to retain other counsel to assist in preparing for trial, when the Temporary Conservator refused to sign a retainer agreement for that work or pay a retainer to allow Fangary Law Group to cover litigation preparation expenses.

<u>Second</u>, Fangary also informed the Court several times in various declarations, and verbally during the March 14, 2022 hearing, that the Fangary Law Group has not received any payments from the Temporary Conservator that were intended to either pay for the Fangary Law Group's attorneys' fees already incurred, or to provide a retainer that would allow the Fangary Law Group to retain additional attorneys to help preparing this case for trial and to participate in pretrial discussions. Again, it is not clear how this Honorable Court, or any other court, can expect Fangary Law Group to substantively participate in pretrial discussions and prepare for trial in a case that has been pending for five years, with potential financial liabilities that may reach $10 million, without getting paid for five years. It simply defies logic that any lawyer or law firm would be able to do so, and it is also, frankly,

shocking that this Honorable Court expected the Fangary Law Group to continue to work on this case and be ready for trial, without getting paid for almost five years.

Third, even ignoring the facts that Fangary Law Group did not have a client willing to sign a retainer agreement between December 9, 2021 and February 18, 2022, and the fact that at that time, Fangary Law Group has not been paid for any of its legal services and litigation costs for more than four years, this is not the type of case that a solo practitioner can solely prepare for trial in the period between December 9, 2021 and February 18, 2022.  This case has been pending for more than four years at that time, with numerous documents exchanged, eight designated experts, and nearly a dozen depositions taken.

By contrast, this Honorable Court found that good cause exists, and granted the ex parte application submitted by Mr. Oldman on April 12, 2022, approximately one week prior to the trial date, to allow the parties additional time for settlement negotiations.  However, that precise reason – settlement negotiations – was one, of many, reasons provided to the Court in the Ex Parte Application submitted by the Fangary Law Group on February 22, 2022.

The decision to grant or deny a requested continuance lies within the broad discretion of the district court, and will not be disturbed on appeal absent clear abuse of that discretion. United States v. Daly, 716 F.2d 1499, 1511 (9th Cir.1983), cert. dismissed, 465 U.S. 1075, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984); United States v. Hernandez, 608 F.2d 741, 746 (9th Cir.1979); United States v. Harris, 501 F.2d 1, 4-5 (9th Cir.1974).  However, it is unclear in this case why the Court's discretion led to denial of an ex parte application to continue the trial date submitted by Fangary Law Group, yet at the same time granting the ex parte application submitted by Mr. Oldman, when both ex parte applications were based, at least in part, on the need for additional time to allow the parties an opportunity to continue to engage in settlement discussions.

### ii. UPRR's Requests For Continuance Due To UPRR's Witnesses' Vacations Deemed Good Cause For Continuance

On January 26, 2022, UPRR submitted a request to the Court, via Stipulation of the parties, to continue the trial date by three weeks because one of UPRR's expert witnesses "is going to be out of the county in Belize from March 28 through April 6 for a wedding . .." and another UPRR witness "is scheduled to be on vacation the week of April 12."  ECF 404 at 2:8-18.  The Court ruled that "The

-13-

**MOTION FOR RECONSIDERATION OF AMENDED ORDER**

witnesses' unavailability provides good cause to continue the trial." January 31, 2022 Order (ECF 405). Thus the Court continued the trial date by three weeks in order to accommodate UPRR's witnesses' vacation schedules.

On February 22, 2022, Fangary Law Group submitted the Ex Parte Application seeking continuance of the trial date, based on a multitude of reasons, including: 1) dealing with Mr. Igdaloff's cognitive impairment issues and the related conservatorship action; 2) to identify a professional fiduciary to be appointed to manage the Igdaloff Trust, and this litigation; 3) to allow Mr. Igdaloff additional time to secure new counsel if the Court granted the Motion To Withdraw; 4) to provide new counsel an opportunity to become familiar with the case and to prepare for trial; and 5) allow the parties additional time to continue to engage in settlement discussions that may dispose of the entire action.

The Court denied the request submitted by Fangary Law Group to continue trial date, and did not continue the trial date by a single day.

When UPRR sought a continuance of the trial date to accommodate two of its witnesses' vacation scheduled, the Court held that the witnesses' unavailability provides good cause to continue the trial, and continued the trial by three weeks. Yet, when Fangary Law Group similarly sought a continuance of the trial date to allow Mr. Igdaloff, a 96 year old suffering from cognitive impairment and lacks contractual capacity, adequate time to secure new counsel for this case, to allow new counsel adequate time to prepare for trial, and to address the five reasons listed above, the Court did not find any of these five reasons to constitute good cause to continue the trial date.

Although the decision to grant or deny a requested continuance lies within the broad discretion of the district court, this Honorable Court's refusal to continue the trial date by a single day to accommodate the Igdaloff Parties' numerous impediments, while continuing the trial date to accommodate UPRR's witnesses' vacation schedules, is difficult to justify. This constitutes a manifest showing of a failure to consider material facts presented to the Court before the Court issued the Amended Order. Therefore, this Motion should be granted to allow this Honorable Court to reconsider its rulings included in the Amended Order.

To the extent that Plaintiffs' motion for reconsideration suffers from any technical or procedural infirmity under either the Federal Rules of Civil Procedure or the Local Civil Rules for the Central District of California, this Court should exercise its inherent power to reconsider the provisions in the Amended Order granting UPRR's Motion In Limine and denying the Igdaloff Parties' Ex Parte Application to continue trial date.  This Honorable Court's refusal to do so will subject the Igdaloff Parties to significant prejudice in this action.

### IV. CONCLUSION

Based on the foregoing, the Court should reconsider the provisions in the Amended Order granting UPRR's Motion In Limine and denying the Igdaloff Parties' Ex Parte Application to continue trial date.

Fangary Law Group expects UPRR to oppose this Motion and to seek sanctions against Fangary.  Fangary Law Group believes this Motion is based on substantive legal basis included herein, and should be granted, and that no sanctions are warranted.

Date:   April 25, 2022                                          FANGARY LAW GROUP

                                                                                 /s/  Hany S. Fangary
                                                                                   Hany S. Fangary
Counsel For HAROLD IGDALOFF, ESTATE Of EVELYN IGDALOFF, DECEASED, and IGDALOFF 1993 FAMILY TRUST